## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| **JANE DOE** | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| **v.** | ) | **C.A. No.: 23-cv-00376** |
| | ) | |
| | ) | |
| **BROWN UNIVERSITY, and** | ) | |
| **JOHN STILES** | ) | |
| *Defendant,* | ) | |

## MEMORANDUM IN SUPPORT OF THE RHODE ISLAND OFFICE OF THE ATTORNEY GENERAL'S OBJECTION AND MOTION TO QUASH SUBPOENA

The Rhode Island Office of the Attorney General ("RIAG"), pursuant to Rule 45(c) of the Federal Rules of Civil Procedure and the Local Rules of the District of Rhode Island, objects to the subpoena served upon it by the Defendant, John Stiles. The RIAG moves this Honorable Court for an Order quashing the subpoena served upon it pursuant to Rule 45(d), or, in the alternative, an Order issuing a protective order pursuant to Rule 26(c) narrowing the scope of the subpoena and imposing limitations on the use and disclosure of any records produced. Said subpoena requests:

"All documents and communications concerning, with, or directed to:
(a)      The incident reported in case number 2021-00089356, ORI number RI0040900,
(b)      [Jane Doe], identified in case number 2021-00089356 as the victim,
(c)      [John Stiles], identified in case number 2021-00089356 as the suspect, and/or

1

(d)     Any complaints or reports concerning the social gathering referenced in case number 2021-00089356 at 244 Hope Street, in Providence, RI, on or about October 29-30, 2021."

*See* Exhibit A.

In response to the subpoena, the RIAG is providing Defendant Stiles with materials that his attorney provided to the RIAG during its investigation. Although these materials would otherwise implicate some of the objections and privileges discussed in this memorandum, the RIAG is nonetheless providing the documents to Defendant Stiles because they were already in Defendant Stiles' possession and the RIAG obtained them from Defendant Stiles. The RIAG reserves the right to object to the production of these records to any other party. Additionally, the RIAG otherwise objects to the remainder of the subpoena.

## I.     The Defendant's subpoena should be quashed or modified pursuant to Rule 45(d)

The Office of the Attorney General is not a party to this civil action. However, it was served the instant subpoena by the Defendant, John Stiles. This subpoena seeks records related to matters that were before a Rhode Island grand jury. Rule 6(e) of the Rhode Island Superior Court Criminal Rules of Procedure prohibits disclosure of "matters occurring before the grand jury." Accordingly, the Office of the Attorney General objects to the Defendant's subpoena in its entirety. *See* Fed. R. Civ. P. 45(d)(3)(A)(iii).

Rule 45 commands that a court shall quash or modify a subpoena if the subpoena "requires disclosure of privileged or other protected matter." Fed. R. Civ. P. 45(d)(3)(A)(iii). "Rule 45(d)(3) provides several potential grounds for quashing … [a] subpoena: some of them mandatory and some discretionary" and "[a]mong the mandatory grounds, a subpoena must be quashed if it requires disclosure of 'privileged or other protected matter.'" *Jordan v. Comm'r, Mississippi Dep't of Corr.*, 947 F.3d 1322, 1335 (11th Cir. 2020). The Defendant's subpoena seeks records that are protected by Rhode Island rules of court and thus should be quashed pursuant to Rule 45(d).

*Grand jury secrecy under Rule 6(e)*

The United States Supreme Court has recognized that "the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings." *Douglas Oil Co. of California. v. Petrol Stops Nw.*, 441 U.S. 211, 218 (1979). Indeed, allowing "the intrusion … into the indispensable secrecy of grand jury proceedings—as important for the protection of the innocent as for the pursuit of the guilty—would subvert the functions" of grand juries. *United States v. Johnson*, 319 U.S. 503, 513 (1943).

The Rhode Island Supreme Court has likewise recognized that "grand jury secrecy plays an integral part not only in the effective prosecution of crimes, but also in the protection of those upon whom the grand jury casts its considerable inquisitorial powers, which in turn is a protection potentially afforded to every

3

member of the public." *In re 38 Studios Grand Jury*, 225 A.3d 224, 240 (R.I. 2020). Indeed, the "[t]he purpose of grand-jury secrecy is to protect not just the targets of a grand-jury investigation, but also witnesses, grand jurors, and others who participate in or who provide evidence to the grand jury." *In re Young*, 755 A.2d 842, 844 (R.I. 2000) (J. Flanders dissenting); *see In the Matter of District Attorney of Suffolk County*, 448 N.E.2d 440, 443 (1983) (noting that "the rule of secrecy applies equally to either one who gives evidence or to one concerning whom evidence is given"). In Rhode Island, Rule 6(e) "codifies the traditional rule of grand jury secrecy" and prohibits disclosure of "matters occurring before the grand jury." *In re Doe*, 717 A.2d 1129, 1134 (R.I. 1998); R.I. Super. Ct. R. Crim. P. 6(e); *see Scientology Intern. v. U.S. Dep't of Justice*, 30 F.3d 224, 235-36 (1st Cir. 1994) (recognizing that the scope of the analogous federal Rule 6(e) is "necessarily broad"). Rule 6(e) also enumerates specific exceptions to this general rule of secrecy, none of which apply here. *See* R.I. Super. Ct. R. Crim. P. 6(e)(3).

Here, Defendant John Stiles seeks records in the Office of the Attorney General's possession that relate to a matter that was previously before a Rhode Island grand jury and that include records of the Grand Jury proceedings and documents that were obtained as a result of and through the Grand Jury. *See In re Special Grand Jury Investigation Concerning Organic Technologies*, 84 Ohio St.3d 304, 703 N.E.2d 790, 793 (1999) (noting that "[t]he secrecy of grant jury proceedings continues even after the grand jury investigation is concluded"). There is no indication that his

4

request falls under any of the exceptions to grand jury secrecy outlined in Rule 6(e)(3). *See In re 38 Studios Grand Jury*, 225 A.3d at 240 (the exceptions in Rule 6(e)(3) are exhaustive and binding as "[t]here is no inherent authority in the Superior Court to disclose grand jury materials beyond that which is permitted by the Superior Court Rules of Criminal Procedure"). "The indispensable secrecy of grand jury proceedings … must not be broken except where there is a compelling necessity." *In Re: 38 Studios Grand Jury*, 2017 WL 2292717, at *8 (quoting *Lucas v. Turner*, 725 F.2d 1095, 1100 (7th Cir. 1984)). Here, no such need has been demonstrated to support the request for the wholesale disclosure of Grand Jury materials, or why ordinary discovery tools such as depositions of parties are inadequate.

The records Defendant Stiles' subpoena seeks includes documents reflecting the deliberations and decision of the grand jury, investigative reports made by the Providence Police Department and evidence gathered by the Providence Police Department which was presented to the grand jury as exhibits, and an internal Brown University Title IX investigation report which was acquired by the grand jury through a subpoena issued by the grand jury.[1] These records go to the heart of the matters that were considered by the grand jury and are precisely the types of records that R.I. Super. Ct. R. Crim. P. 6(e) was intended to protect. Though these records

---

[1] Brown University itself is a party to the instant action and Defendant Stiles could use traditional discovery tools to attempt to obtain the Title IX investigation report from Brown University rather than attempting to obtain it from a non-party as it seeks to do here.

now exist within the possession of the RIAG, the RIAG is not free to provide them to interested parties without an order of the Rhode Island Superior Court granting it an exemption to the cloak of secrecy provided by R.I. Super. Ct. R. Crim. P. 6(e).[2] Accordingly, this Court should issue an Order quashing or modifying the instant subpoena pursuant to Fed. R. Civ. P. 45(d).

The RIAG further objects to the instant subpoena as it seeks records that not only are protected by R.I. Super. Ct. R. Crim. P. 6(e), but that are also privileged and/or confidential pursuant to the work product doctrine, deliberative process privilege, law enforcement privilege, and privacy. The Defendant's subpoena broadly seeks all records related to a criminal investigation without any safeguards or limitations to avoid catching privileged or otherwise protected materials in its net. Moreover, no exceptions or waiver apply to the privileges implicated by the production of the requested records. *See* Fed. R. Civ. P. 45(d)(3)(A)(iii); *see also*

---

[2] Rule 6(e) squarely prohibits the RIAG from disclosing the records of the Grand Jury proceedings and the Brown University Title IX investigation report which was acquired by the grand jury through a subpoena issued by the grand jury. These materials squarely fall within the scope of Rule 6(e). The other police and investigative reports that were acquired by the RIAG in advance of the Grand Jury proceedings also implicate Rule 6(e) because they were presented to the Grand Jury and used by the RIAG as part of its investigation leading to the Grand Jury. The RIAG acknowledges that Rule 6(e) applies less directly to these police records that were obtained prior to the Grand Jury proceedings, but the production of these records also implicates the other grounds for objection set forth below, including law enforcement privilege and privacy interests.

Exhibit B, the Office of the Attorney General's Subpoena Privilege Log. The RIAG produces a privilege log herewith.

*Work product doctrine*

The work-product doctrine is a bedrock principle of law. It is designed to protect the "mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." *United States v. Nobles*, 422 U.S. 225, 238 (1975). As the Supreme Court observed, "it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel." *Hickman v. Taylor*, 329 U.S. 495, 511 (1947). Allowing invasions into this zone of privacy would lead to "inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served." *Id.* For these reasons, the work-product doctrine shields from disclosure documents that reflect attorneys' work product "in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways." *Id.*

In criminal prosecutions, the work-product doctrine's "role in assuring the proper functioning of the criminal justice system is even more vital" than in civil litigation. *Nobles*, 422 U.S. at 237. Indeed, "[t]he interests of society and the accused in obtaining a fair and accurate resolution of the question of guilt or innocence demand that adequate safeguards assure the thorough preparation and presentation

of each side of the case." *Id.* Federal courts have recognized that "[t]o prosecute a case effectively, [an Attorney General] must 'work with a certain degree of privacy.'. . . .If [an Attorney General's] notes . . . regarding his charging decisions and his trial strategy could be subpoenaed at will in subsequent civil litigation—particularly a malicious prosecution suit brought by a former defendant—the government's ability to prepare its case might be seriously impaired." *Starkey v. Birritteri*, 2013 WL 3984599 at *1 (D. Mass. Aug. 2, 2013) (quoting *Hickman*, 329 U.S. at 510). Thus, documents relating to a public prosecutor's internal decision-making are entitled to protection as work product because they reflect the mental impressions and opinions of counsel. *See Mauti v. Scuncio*, No. CV 08-054S, 2009 WL 10674195, at *3 (D.R.I. June 10, 2009) (holding that documents, handwritten notes, and emails produced by prosecutors at the Attorney General's Office "could reveal the mental impressions and opinions of counsel"); *cf. O'Connell v. Cowan*, 332 S.W.3d 34, 42 (Ky. 2010), *reh'g granted, opinion modified* (Dec. 16, 2010) ("The need to freely formulate legal theories, discuss the investigation of the case, and speak with victims and witnesses, is most especially true in criminal prosecutions….").

Protecting this zone of privacy is especially important in the case of the Attorney General because it is a "quintessential 'repeat player'" as it is involved in the prosecution of most criminal cases in the State of Rhode Island. *See Atchison*, 344 F.R.D. at 35. Thus, its "most basic practices would be affected by the threat of its attorneys' trial preparation strategies being subject to discovery in a subsequent

8

action." *Id.* This directly implicates one of the United States Supreme Court's stated purposes for the work product doctrine: to protect an attorney's ability to "prepare his legal theories and plan his strategy without undue and needless interference." *Hickman*, 329 U.S. at 511; *see Atchison*, 344 F.R.D. at 35; *Mauti*, 2009 WL 10674195 at *3 ("counsel for the RIAG argued strongly and effectively regarding the importance of allowing prosecutors to communicate candidly with each other by email about evaluation of evidence and charging decisions without fear of later disclosure"). Indeed, "[n]ot even the most liberal of discovery theories can justify unwarranted inquiries into the files and the mental impressions of an attorney." *Hickman*, 329 U.S. at 510.

Here, the Defendant's subpoena seeks notes taken by an RIAG prosecutor taken during her interview of an alleged victim, which contains her evaluations of the victim and her mental impressions of the victim. These notes also contain her impressions of the legal case and legal theories. All of these notes are protected under the work product doctrine. *See Goldberg v. United States*, 425 U.S. 94, 106 (1976) ("If a government attorney has recorded his own thoughts in his interview notes," the notes are protected work product); *State v. von Bulow*, 475 A.2d 995, 1010 (R.I. 1984) (notes of witness interviews "clearly fall within the definition of opinion work product").

The Rhode Island Federal District Court and other courts have consistently quashed subpoenas seeking similar attorney work product materials. *In Robinson v.*

9

*City of Providence*, the Rhode Island Federal District Court held that the "routine trial preparation materials, notes and historical status reports on Court proceedings" produced by prosecutors in the Attorney General's Office are protected by the work product doctrine. No. CV 16-00105-WES, 2018 WL 4466015, at *1 (D.R.I. Sept. 18, 2018). In *Mauti v. Scuncio*, the Rhode Island Federal District Court determined that the work product doctrine applied to Attorney General prosecutors' documents containing timeline summaries, handwritten notes, and email chains because "such internal communications could reveal the mental impressions and opinions of counsel." 2009 WL 10674195 at *3. The Rhode Island Supreme Court, though considering a different set of rules, came to a similar conclusion rejecting a criminal defendant's argument that the trial court improperly quashed a subpoena for handwritten notes taken by a prosecuting attorney when interviewing a witness, declaring: "[c]learly, these notes were attorney-work product…." *State v. Usenia*, 599 A.2d 1026, 1030 (R.I. 1991). And other Courts in the First Circuit have reached similar conclusions in relation to comparable requests for a prosecutor's emails, thought process, and strategic assessments. *See*, *e.g.*, *Stamps*, 38 F. Supp. 3d at 145 (quashing a subpoena in part because it sought "e-mails between attorneys of the DA's office about the strategy and approach the office would take toward this case" and as such "the interests outlined in *Hickman* are fully implicated by these documents"); *Starkey*, 2013 WL 3984599, at *1-2 (modifying a subpoena to "exclude documents and testimony reflecting the [prosecutors'] thoughts or opinions about

10

[plaintiff's] prosecution, and to exclude materials created by the [prosecutor's] in preparation for that case" because it found the work product doctrine applied to the non-party district attorney's office).

*Deliberative process privilege*

The RIAG prosecutor's notes, which include her thoughts and deliberations on litigation decisions, are further protected under the deliberative process privilege, which precludes "discovery of materials that expose the internal process by which [government] decisions were made," including decisions by prosecutors. *Starkey*, 2013 WL 3984599 at *2; *see NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 151 (1975). This privilege is underscored by the long-accepted intolerance towards judicial inquiry into the process by which government litigation decisions are formulated. *See U.S. v. American Tel. and Tel. Co.*, 524 F. Supp. 1381, 1389 (D.D.C. 1981) (holding that U.S. Justice Department attorneys could not be questioned as to why they changed their position in a lawsuit). Indeed, "[t]he decision whether to prosecute is the product of a deliberative process which should be afforded a high degree of protection from public inquiry." *Gomez v. City of Nashua, N.H.*, 126 F.R.D. 432, 435 (D.N.H. 1989); *see Senate of the Com. of Puerto Rico on Behalf of Judiciary Comm. v. U.S. Dep't of Just.*, 823 F.2d 574, 585 n.38 (D.C. Cir. 1987) ("the process leading to a decision to initiate, or forego, prosecution is squarely within the scope of [the deliberative process] privilege....").

11

Courts in this Circuit have consistently found that "[d]ocuments discussing whether criminal charges should be brought against an individual are direct parts of the deliberative process on legal matters, and therefore fall under the deliberative-process privilege." *See Stamps*, 38 F. Supp.3d at 140-41; *see Shea v. Porter*, No. CV 1:08-12148-FDS, 2013 WL 12318557, at *5 (D. Mass. Apr. 9, 2013) ("Discovery of the basis for a prosecution or non-prosecution are typically protected by either the deliberative process privilege and/or the law enforcement privilege."). In *Mauti*, the Rhode Island Federal District Court held that emails which included prosecutors' evaluations of evidence and charging decisions were protected by the deliberative process privilege (and the work product doctrine). 2009 WL 10674195 at *3. In *Gomez v. City of Nashua*, the New Hampshire District Court determined that any documents "which could reflect judgments regarding the Attorney General's decision not to prosecute the case" were protected by the deliberative process privilege. 126 F.R.D. at 436. In *Starkey v. Birritteri*, the Massachusetts District Court held that the deliberative process privilege applied to "documents or testimony reflecting the [prosecutors'] thoughts or opinions about [plaintiff's] prosecution" and "materials created by [prosecutors] in preparation for that case." 2013 WL 3984599 at *2.

*Law enforcement privilege*

The Attorney General's work product, the records obtained by the RIAG in the course of its investigation into this matter, and the investigative reports created by the Providence Police Department and evidence gathered by the Providence Police

Department are also protected by the law enforcement privilege. The United States Supreme Court recognized the law enforcement privilege in *Roviaro v. United States*, 353 U.S. 53 (1957); *see Commonwealth of Puerto Rico v. United States*, 490 F.3d 50, 62 (1st Cir. 2007) (explaining the "Supreme Court first recognized a qualified privilege for certain information related to law enforcement activities in *Roviaro*"). It held that the "purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement." *Roviaro*, 353 U.S. at 59. Though *Roviaro* dealt with the disclosure of the identify of a confidential informant, the First Circuit has "recognized a privilege for law enforcement materials in other circumstances" too. *See Commonwealth of Puerto Rico*, 490 F.3d at 62. It has recognized that the law enforcement privilege extends to "law enforcement techniques and procedures." *Id.* at 64; *see Gulluni v. Levy*, 85 F.4th 76, 85 (1st Cir. 2023) (holding that DOJ's application of the law enforcement privilege was not arbitrary and capricious because plaintiff sought records that would disclose law enforcement techniques and procedures).

The Rhode Island Federal District Court and other courts have recognized the importance of the protections of the law enforcement privilege. In *United States v. Stroup*, the Massachusetts District Court prohibited disclosure of law enforcement reports related to its investigation of a criminal defendant's social media accounts even under a proposed protective order because of the protections of the law enforcement privilege and because it would compromise the trust between local police

13

departments and federal law enforcement agencies. 347 F.R.D. 239, 250-51 (D. Mass. 2024) (citing *Gulluni*, 85 F.4th at 86 ("disclosure might decrease the willingness of local police departments to share records with DOJ in the future")). Recently in *Briggs v. Amado*, the Rhode Island Federal District Court held that minutes of the Rhode Island Department of Corrections Classification Board were protected from disclosure by the law enforcement privilege as they contain "information reflecting law enforcement activities and, to that extent, some of what is contained in them falls squarely within the scope of the law enforcement privilege." No. CV 22-31-WES, 2024 WL 3163058, at *2 (D.R.I. June 25, 2024), *reconsideration denied*, No. CV 22-31-WES, 2024 WL 3952631 (D.R.I. Aug. 27, 2024). The Rhode Island District Court has also recognized that the law enforcement privilege protects the name of law enforcement personnel participating in investigations and law enforcement personnel's mental decisions and impressions. *See Prudential Ins. Co. of Am. v. Menard*, No. CA 06-395 T, 2007 WL 3174053, at *3-4 (D.R.I. Oct. 29, 2007).

Here, the disclosure of the Attorney General's work product, the records obtained by the RIAG in the course of its investigation into this matter, and the investigative reports created by the Providence Police Department and evidence gathered by the Providence Police Department would disclose the law enforcement techniques and procedures used by the Providence Police Department and the RIAG. Thus, it is protected from disclosure by the law enforcement privilege. *See Gulluni*,

85 F.4th at 85. These records can also come within the scope of R.I. Super. Ct. R. Crim. P. 6(e) as they were considered by the grand jury.

*Privacy*

Rule 45(d)(1) instructs a party issuing a subpoena to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Rule 45(d)(3) requires a court to quash or modify a subpoena that "subjects a person to undue burden." Here, the Defendant's subpoena imposes an undue burden on the RIAG by attempting to force the RIAG to disclose records which implicate sensitive privacy interests. The subpoena seeks, without any limitations in scope, records related to an alleged sexual assault of a college student. This includes records detailing her personal medical information and intimate details about her alleged sexual assault. The privacy interests inherent in the disclosure of these records necessitate the quashing of the Defendant's subpoena as they constitute "protected matter" under Fed. R. Civ. P. 45(d)(3)(A)(iii). Furthermore, the Defendant's subpoena seeking records that so greatly infringe on an alleged crime victim's privacy interests places an undue burden on the RIAG particularly given its role as a law enforcement agency and protector of the public good, and forcing the disclosure of such records could impair the RIAG's ability to investigate and prosecute crimes in the future and the willingness of alleged victims of crimes – especially sexual assault – to cooperate with the RIAG. *See State v. Lead Indus., Ass'n, Inc.*, 951 A.2d 428, 472 (R.I. 2008) ("the Attorney General has the responsibility of a minister of justice and not simply

that of an advocate"); *State v. Peters*, 107 A.2d 428, 431 (1954) ("[The Attorney General] is in effect the representative of the people and not an advocate in the ordinary meaning of that term …. He represents all the people of the [state]."). The disclosure of the records also implicates the privacy interests of the alleged perpetrator, who was never arrested or charged with a crime.

The Rhode Island Federal District Court and other courts have taken into account the privacy interests implicated by the required disclosure of records when deciding to quash or narrow the scope of a subpoena. Recently in *Hood-Harrison v. HallKeen Mgmt., Inc.*, the Rhode Island Federal District Court explicitly took into account the privacy interests of the plaintiff implicated by a subpoena and limited the temporal scope of the subpoena. No. CV 23-481-WES, 2024 WL 4008547, at *2 (D.R.I. Aug. 30, 2024). Indeed, courts have recognized that "[a] party also may move to quash a subpoena upon a showing that there is a privacy interest applicable." *Windsor v. Martindale*, 175 F.R.D. 665, 668 (D. Colo. 1997); *see In re Grand Jury Proceedings (Diamante)*, 814 F.2d 61, 66 (1st Cir.1987) (recognizing "privacy interest" along with privilege as a basis to establish standing to move to quash a subpoena).

*Medical records*

The Defendant's subpoena seeks any records concerning Jane Doe, without limitation to scope. This includes medical records related to Jane Doe's alleged sexual assault perpetrated by the Defendant. Jane Doe's medical records are protected from disclosure by federal and state law.

16

Under Rhode Island law, a court shall grant a motion to quash a subpoena seeking confidential medical records "unless the requesting party can demonstrate that there is reasonable ground to believe the information being sought is relevant to the proceedings, and the need for the information clearly outweighs the privacy interest of the individual." R.I. Gen. Laws § 5-37.3-6.1(d). The Defendant has failed to make such a demonstration and the RIAG is unable to ascertain any reasonable grounds to believe the need for the Defendant's access to the confidential medical information sought clearly outweighs Jane Doe's personal privacy interests.

At the Federal level, "Congress enacted HIPAA, in part, to protect the security and privacy of health information" and "HIPAA embodies Congress' recognition of the importance of protecting the privacy of health information in the midst of the rapid evolution of health information systems." *In re New England Compounding Pharmacy, Inc. Prods. Liab. Litig.*, No. MDL 13-2419-FDS, 2013 WL 6058483, at *12 (D. Mass. Nov. 13, 2013). HIPAA does provide certain exceptions to its general rule prohibiting the dissemination of confidential medical information, including in connection with judicial proceedings. *See* 45 C.F.R. § 164.512(a). Under the HIPAA, confidential medical information can be released if ""in response to a subpoena, discovery request, or other lawful process,' if the party seeking the information either notifies the patient (or at least makes a good faith effort to do so) or makes a 'reasonable effort' to secure a qualified protective order, that is, an order that prohibits the use or disclosure of the information outside the litigation and requires

17

the return or destruction of the information at the end of the litigation." *Northwestern Memorial Hosp. v. Ashcroft*, 362 F.3d 923, 925 (7th Cir.2004) (citing 45 C.F.R. § 164.512(e)(1)). Here, the Defendant has not demonstrated that he has taken any steps to satisfy this exception. Accordingly, the RIAG has an obligation under state and federal law to maintain the confidentiality of Jane Doe's medical records and this Court should quash Defendant's subpoena seeking release of the same.

*Internal RIAG communications*

The Defendant's subpoena seeks all communications related to Jane Doe, John Stiles, and the related criminal investigation. An IT search for internal email correspondence between RIAG staff using the key words provided in the Defendant's subpoena produces over one thousand potentially responsive email messages. The Defendant's subpoena should be quashed or, at a minimum, modified to remove this request for the RIAG's internal communications as it imposes an "undue burden" on the RIAG. Rule 45(d)(3)(iv). Reviewing all of the potentially responsive email messages for privileged information and producing them to the Defendant would impose a severe burden on the RIAG in terms of hours of employee time that would have to be dedicated to such a task. Indeed, the vast majority of the responsive email messages would be privileged by the work product doctrine (as they likely contain the mental impressions of the attorneys working on the relevant criminal case), the deliberative process privilege (as the attorneys working on the criminal case likely discussed and made decisions related to their prosecution legal case in these emails),

18

the attorney-client privilege (as the email were sent by RIAG attorneys discussing this legal case), and Rule 6(e) (as many likely pertain to Grand Jury proceedings).

Moreover, the Defendant's request imposes an undue burden upon the RIAG because he has failed to demonstrate how his request is relevant to his legal claims in the underlying civil action. Neither the RIAG nor any of its attorneys are parties to the underlying civil action. The Defendant has failed to demonstrate how any of the internal communications and thoughts of RIAG attorneys are relevant or material in any way for the proving of claims or defenses in the underlying civil action. Accordingly, Rule 45(d)(3)(iv) requires this Cour to quash the Defendant's subpoena or, at a minimum, to modify the subpoena to remove this request for the RIAG's internal communications.

In sum, this Court should issue an Order quashing or modifying the Defendant's subpoena because it seeks records that are privileged or otherwise protected by R.I. Super. Ct. R. Crim. P. 6(e), the work product doctrine, the deliberative process privilege, the law enforcement privilege, privacy interests, and federal and state laws protecting the confidentiality of medical records. The subpoena should also be quashed or modified as it imposes an undue burden upon the RIAG by seeking to require it to produce records which implicate significant privacy interests and requiring it to review over one thousand potentially responsive email records that are likely privileged and are irrelevant to the Defendant's claims and defenses in the underlying civil action. Moreover, a number of the records at issue are reports and

records prepared by other entities that could be obtained from other entities, including potentially Brown University which is a party to this case. The party serving the subpoena has not demonstrated that the records cannot be obtained by other means, particularly through a party to the case. *See In re Grand Jury*, C.A. No. PM-2010-6179, at *11-12 (R.I. Super. Feb. 26, 2013) (determining petitioner "has not demonstrated that [he] cannot prepare [his] witnesses for trial using information gleaned from traditional discovery sources") (citing U*nited States v. Proctor & Gamble Co.*, 356 U.S. 677, 682 (1958) (holding that petitioners must demonstrate with specificity that they have thoroughly pursued other potential avenues of information before seeking grand jury materials))).

## II.    In the alternative, a protective order should be issued pursuant to Rule 26(c)

If this Court does not grant the RIAG's motion for to quash or modify the Defendant's subpoena pursuant to Rule 45(d) then it should issue a protective order pursuant to Fed. R. Civ. P. 26(c) that narrows the scope of the subpoena and that prevents the disclosure of the requested records, or at a minimum, prohibits their distribution outside of use in the underlying civil action. Rule 26(c) allows a party to move for a protective order and authorizes the court "for good cause" shown to "issue an order protect[ing] a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c).

As explained above, the Defendant's subpoena seeks records that are privileged or otherwise protected by R.I. Super. Ct. R. Crim. P. 6(e), the work product doctrine, the deliberative process privilege, the law enforcement privilege, privacy interests, and federal and state laws protecting the confidentiality of medical records. Requiring the RIAG to produce such privileged or protected records oppresses and places an undue burden on the RIAG. Therefore, this Court should issue a protective order pursuant to Rule 26(c) shielding the records protected from these privileges and federal or state law.

Indeed, federal courts have found good cause under Rule 26(c) to protect materials covered by grand jury secrecy. *See United States v. DeNunzio*, 450 F. Supp. 3d 86, 91 (D. Mass. 2020) (denying a request to modify a protective order to allow grand jury materials to be used for discovery in a civil action). Federal courts have likewise found good cause under Rule 26(c) to protect materials covered by the work product doctrine. *See In re Turkey Antitrust Litig.*, No. 19 C 8318, 2022 WL 797180, at *13 (N.D. Ill. Mar. 16, 2022) (finding good cause to protect non-party work product under Rule 26(c) because "oppression and undue burden" are caused by a subpoena seeking the same). Federal courts have likewise found good cause under Rule 26(c) to protect materials covered by the deliberative process privilege. *See Baker v. Dupnik*, No. CV 09-0015-TUC-HCE, 2010 WL 9561922, at *9 (D. Ariz. Jan. 27, 2010) (issuing a protective for records that were protected by the deliberative process privilege). Federal courts have likewise found good cause under Rule 26(c) to protect materials

covered by the law enforcement privilege. *See Dorsett v. Cnty. of Nassau*, 762 F. Supp. 2d 500, 520-22 (E.D.N.Y.), *aff'd*, 800 F. Supp. 2d 453 (E.D.N.Y. 2011), *aff'd sub nom. Newsday LLC v. Cnty. of Nassau*, 730 F.3d 156 (2d Cir. 2013) (issuing a protective order for records that were protected by the law enforcement privilege); *S.E.C. v. Rosenfeld*, No. 97-1467-RPP, 1997 WL 576021, at *4 (S.D.N.Y. Sept. 16, 1997) (protective order warranted where deposition topics created an undue burden with respect to attorney work product and the SEC's law enforcement privilege). Federal courts have likewise found good cause under Rule 26(c) to protect materials the disclosure of which would implicate privacy interests. *See Gardner v. Cape Cod Healthcare, Inc.*, 344 F.R.D. 127, 134 (D. Mass. 2023) (taking into account the plaintiff's "privacy and confidentiality concerns" in its Rule 26 protective order analysis); *Disc. Video Ctr., Inc. v. Does 1-29*, 285 F.R.D. 161, 167 (D. Mass. 2012) (issuing a protective order to protect the privacy interests of cable subscribers against a subpoena). This Court should follow its sister courts in utilizing the protections of Rule 26(c) to stop the Defendant from imposing an undue burden upon the RIAG by requiring it to produce privileged or otherwise protected records.

The Defendant also seeks the internal communication of the RIAG regarding a criminal case. This request resulted in over one thousand potentially responsive email messages, which would require substantial time to review and most of which are likely privileged. Worse still, the Defendant has failed to demonstrate how any of these internal RIAG communications are relevant to any of his claims or defenses in

22

the underlying civil action or how this request is proportional to the needs of the case. Fed. R. Civ. P. 26(b)(2)(c) requires the court, "[o]n motion or on its own," to "limit the frequency or extent of discovery otherwise allowable by these rules ... if it determines that ... the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C)(iii). Rule 26(b)(1) sets the scope of discovery as "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Courts utilize Rule 26(b)(2)(c) in addressing motions for a protective order. *See Gardner*, 344 F.R.D. at 134 (granting a protective order pursuant to Rule 26(b)(2)(c) for requests that were not relevant and proportional to the needs of the case, but denying it for requests that were relevant and proportional to the needs of the case); *Controlled Kinematics, Inc. v. Novanta Corp.*, C.A. No. 17-cv-11029-ADB, 2019 WL 3082354, at *6-7 (D. Mass. July 15, 2019) (relying on Rule 26(b)(2)(c) in adjudicating Rule 26(c) motion for protective order).

Here, the Defendant's request for over one thousand potentially responsive internal email messages between RIAG employees discussing a legal case is not relevant to any of the Defendant's claims or defenses in the underlying civil action nor is such a broad and burdensome request proportional to the needs of the case. The Defendant has not demonstrated how the internal deliberations, communications, and work of RIAG staff have any relevance to any claim or defense in this case, or how traditional discovery of the parties cannot be utilized to obtain any relevant evidence. Especially as the RIAG's work product in this matter related

23

to secret Grand Jury proceedings, its investigative process, and its interview of an alleged sexual assault victim, it is imperative to the work of the RIAG that it be permitted to protect its internal work product, communications, and deliberations from disclosure as disclosure could directly implicate the RIGA's ability to do its job and investigate and prosecute such cases in the future. This is especially true in these circumstances where the Defendant issued a blanket broad subpoena that constitutes a fishing expedition unmoored to any particular need to invade the sacred space of this Office's investigative work in connection with a secret grand jury proceeding. For these reasons, requiring this Office to conduct a painstaking review of hundreds of emails that likely are privileged would be unduly burdensome and disproportional. Therefore, this Office's work product and these potentially responsive email messages should be protected pursuant to Rule 26(b)(2)(c).

For the reasons stated herein and in the RIAG's subpoena privilege log, this Honorable Court should sustain the Office of the Attorney General's objection and quash Plaintiff's subpoena pursuant to Rule 45(d) or, in the alternative, issue a protective order pursuant to Rule 26(c). If the Court declines to quash the subpoena entirely, the RIAG asks the Court to substantially narrow the scope of the subpoena to exclude records that directly implicate Rule 6(e) and the RIAG's work product and internal communications, and enter a protective order limiting the disclosure and use of any records produced in response to the subpoena.

24

Respectfully submitted,

State of Rhode Island Office of the Attorney General,

By:

PETER F. NERONHA
ATTORNEY GENERAL


*/s/ Patrick Reynolds*
Patrick Reynolds, #10459
Special Assistant Attorney General
150 South Main Street
Providence, RI 02903
Tel: (401) 274-4400, Ext. 2019
Fax: (401) 222-3016
preynolds@riag.ri.gov


## CERTIFICATION OF SERVICE

I the undersigned, hereby certify that I have filed the within Document via the ECF System and that it is available for viewing and downloading on this 17th day of January, 2025. A copy has also been sent via the ECF filing system to counsel of record for the Defendant, John Stiles.

J. Richard Ratcliffe, Esq.
rratcliffe@rhgllp.com


*/s/ Abigail Clark*

Exhibit A

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
District of Rhode Island

| | | |
|---|---|---|
| JANE DOE | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.  1:23-cv-00376 |
| BROWN UNIVERSITY and JOHN STILES | ) | |
| *Defendant* | ) | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:
Keeper of Records, Department of Attorney General,
150 South Main Street, Providence, RI 02903

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

SEE ATTACHED EXHIBIT A

| Place: Ratcliffe Harten Galamaga LLP 40 Westminster St., #700, Providence, RI 02903 | Date and Time: 12/18/2024 9:30 am |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:    11/20/2024

*CLERK OF COURT*

OR

_____          _____
*Signature of Clerk or Deputy Clerk*                  J. Richard Ratcliffe
                                                        *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*    Def. John Stiles
_____, who issues or requests this subpoena, are:
J. Richard Ratcliffe, 40 Westminster Street, Suite 700, Providence, RI 02903, rratcliffe@rhgllp.com, (401) 331-3400

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

A true copy Attest
Constable #6006
Raymond J. Baptista
11/21/2024

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.    1:23-cv-00376

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❑ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❑ I returned the subpoena unexecuted because: _____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# **Exhibit A**

1. RECORDS REQUESTED

   All documents and communications concerning, with, or directed to:

   (a) The incident reported in case number 2021-00089356, ORI number RI0040900,

   (b) ████████████, identified in case number 2021-00089356 as the victim,

   (c) ████████████, identified in case number 2021-00089356 as the suspect, and/or

   (d) Any complaints or reports concerning the social gathering referenced in case number 2021-00089356 at 244 Hope Street, in Providence, RI, on or about October 29-30, 2021.

2. SCOPE

   This request includes but is not limited to subpoenas, notices, reports, narratives, supplements, intakes, complaints, interviews (transcribed and/or audio- or video-recorded), notes, statements, text or digital messages, electronic mail, paper communications, images, and audio or video recordings or files.

Exhibit B

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| JANE DOE )<br>    *Plaintiff,* )<br>)<br>v. )<br>)<br>)<br>BROWN UNIVERSITY, and )<br>JOHN STILES )<br>    *Defendants,* ) | C.A. No.: 23-cv-00376 |

<u>OFFICE OF THE RHODE ISLAND ATTORNEY GENERAL'S RULE 45
DISCLOSURE</u>

Now comes counsel for the Office of the Rhode Island Attorney General and

provides this privilege log pursuant to Rule 45 of the Federal Rules of Civil Procedure.

**Disclosure List/ Privilege Log
File- <u>State v. [John Stiles]</u>**

The following documents are withheld in full because no portion of the

document was reasonably segregable. In addition to the privilege claims noted in the

chart below, the disclosure of these records is also unduly burdensome especially as

the records could be obtained from other sources, implicates an invasion of multiple

parties' privacy interests related to a highly sensitive subject matter, and is not

proportional to the needs of the case. The key is as follows:

    DP= Deliberative Process Privilege
    WP= Work Product Privilege
    LE= Law Enforcement Privilege

| # | Category or Document Description | Author | Date | Total Document | Privilege Claim |
|---|---|---|---|---|---|
| 1 | Grand jury proceedings records | N/A | N/A | 6 pages | R.I. Super. Ct. R. Crim. P. 6(e) |

1

| 2 | Police Narrative | N/A | N/A | 2 pages | LE; R.I. Super. Ct. R. Crim. P. 6(e) |
|---|---|---|---|---|---|
| 3 | Providence Police Incident Report | N/A | November 29, 2021 | 4 pages | LE; R.I. Super. Ct. R. Crim. P. 6(e) |
| 4 | Witness Statement | [Jane Doe] | November 9, 2021 | 5 pages | LE; R.I. Super. Ct. R. Crim. P. 6(e) |
| 5 | Domestic Violence/ Sexual Assault Reporting Form | N/A | November 9, 2021 | 2 pages | LE; R.I. Super. Ct. R. Crim. P. 6(e) |
| 6 | Photo of video footage of [John Stile's] bed with what appears to be blood on it and the video footage itself | N/A | N/A | 1 page; 1 video, 0:01 in length | LE; R.I. Super. Ct. R. Crim. P. 6(e) |
| 7 | Snapchat message | N/A | N/A | 1 page | LE; R.I. Super. Ct. R. Crim. P. 6(e) |
| 8 | Photo | N/A | N/A | 1 page | LE; R.I. Super. Ct. R. Crim. P. 6(e) |
| 9 | 2021 Men's Lacrosse Roster | N/A | N/A | 1 page | LE; R.I. Super. Ct. R. Crim. P. 6(e) |
| 10 | Phone screenshot photos that appear to contain information about Jane Doe's movements on Oct. 29 and 30 (year unknown) | N/A | N/A | 3 pages | LE; R.I. Super. Ct. R. Crim. P. 6(e) |
| 11 | Brown University Health Services Medical Report | Gillian Morris, MD | November 4, 2021 | 3 pages | LE; R.I. Super. Ct. R. Crim. P. 6(e); HIPAA; R.I. Gen. Laws § 5-37.3-6.1 |
| 12 | Protocall Report (Brown University | N/A | November 5, 2021 | 3 pages | LE; R.I. Super. Ct. R. Crim. P. 6(e) |

| | | | | | |
|---|---|---|---|---|---|
| | Sexual Assault Line) | | | | |
| 13 | Providence Police Administrative Affidavit | Colonel Hugh T. Clements | August 25, 2021 | 1 page | LE; R.I. Super. Ct. R. Crim. P. 6(e) |
| 14 | New Hampshire Driver Status Response | N/A | November 17, 2021 | 1 page | LE; R.I. Super. Ct. R. Crim. P. 6(e) |
| 15 | Email to Koren Pacheco (containing information from the New Hampshire Driver Status Response) | Kasey Washington | November 27, 2021 | 2 pages | LE; R.I. Super. Ct. R. Crim. P. 6(e) |
| 16 | NCIC Report | N/A | November 22, 2021 | 1 page | LE; R.I. Super. Ct. R. Crim. P. 6(e) |
| 17 | Brown University Title IX Investigation Report | Janet Elie Faulkner | March 4, 2022 | 219 pages | LE; R.I. Super. Ct. R. Crim. P. 6(e) |
| 18 | Michael Morales Letter | Amy Dodge | February 7, 2022 | 1 page | Wrong file, non-responsive |
| 19 | Prosecutor Handwritten and Typed Notes. These notes include 1) Attorney Dodge's internal thoughts, impressions, and legal theories regarding the grand jury proceedings, 2) handwritten notes from her interview with Jane Doe and her impressions of Ms. Doe, 3) | Amy Dodge | N/A | 7 pages | WP; DP; R.I. Super. Ct. R. Crim. P. 6(e) |

3

| | | | | |
|---|---|---|---|---|
| | her impressions and thoughts about the legal theories and strategies in the case | | | | |
| 20 | News Articles related to John Stiles | N/A | January 16, 2022; January 27, 2022 | 11 pages | LE; R.I. Super. Ct. R. Crim. P. 6(e) |
| 21 | Domestic Abuse Complaint | Jane Doe | November 18, 2021 | 7 pages | LE; R.I. Super. Ct. R. Crim. P. 6(e) |
| 22 | Audio Recording of a temporary restraining order hearing before Judge Smith | N/A | December 3, 2021 | 1 audio recording, 13:16 in length | LE; R.I. Super. Ct. R. Crim. P. 6(e) |
| 23 | Audio Recording of an interview of a witness conducted by Det. Garcia of the Providence Police Department | Det. Garcia | November 18, 2021 | 2 audio recording, 07:28 in length and 04:43 in length | LE; R.I. Super. Ct. R. Crim. P. 6(e) |
| 24 | Audio Recording of an interview of Jane Doe conducted by Det. Garcia of the Providence Police Department | Det. Garcia | November 12, 2021 | 1 audio recording, 30:02 in length | LE; R.I. Super. Ct. R. Crim. P. 6(e) |

Respectfully submitted,

State of Rhode Island Office of the Attorney General,

By:

PETER F. NERONHA
ATTORNEY GENERAL


*/s/Patrick Reynolds*
Patrick Reynolds, #10459
Special Assistant Attorney General
150 South Main Street
Providence, RI 02903
Tel: (401) 274-4400, Ext. 2019
Fax: (401) 222-3016
preynolds@riag.ri.gov


## CERTIFICATION OF SERVICE

I hereby certify that I mailed a true copy of the foregoing Disclosure by first class mail, postage prepaid on this 17th day of January, 2025 to:

Richard Ratcliffe, Esq.
Ratcliffe Harten Galamaga, LLP
40 Westminster St #700
Providence, RI 02903


*/s/ Abigail Clark*

5