UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| JANE DOE, <br><br> Plaintiff/Counterclaim Defendant, <br><br> v. <br><br> BROWN UNIVERSITY, <br><br> Defendant/Crossclaim Defendant, <br><br> v. <br><br> JOHN STILES, <br><br> Defendant/Crossclaim Plaintiff/ Counterclaim Plaintiff | C.A. No. 23-cv-00376-MSM-LDA |

ORDER

Mary S. McElroy, United States District Judge.

Per this Court's Order of April 28, 2025 (ECF No. 75), the Court has conducted the *in camera* review of the documents identified by the Rhode Island Office of the Attorney General ("RIAG") in its privilege log as Category 19 ("Prosecutor Handwritten and Typed Notes"). The RIAG withheld these documents from production in response to the defendant/counterclaim plaintiff, John Stiles', subpoena. The Court now analyzes each of the RIAG's claimed privileges.

A. Attorney Work Product

The work-product doctrine, codified in Fed. R. Civ. P. 26(b)(3), protects from discovery "[d]ocuments and tangible things prepared in anticipation of litigation or

1

for trial by or for another party or its representative" absent a showing of substantial need, undue hardship, and inability to obtain their substantial equivalent by other means.

Mr. Stiles argues that work product protection does not apply to nonparties to litigation, like the RIAG here. The RIAG, however, counters that the work-product doctrine applies notwithstanding its status as a non-party, because the doctrine arises not solely from the text of Rule 26(b)(3), but from the broader common-law principles set out in *Hickman v. Taylor*, 329 U.S. 495 (1947).

Indeed, many courts have applied the doctrine to non-parties when doing so "vindicated the purposes underlying the doctrine." *See Jean v. City of New York*, No. CV-09-801 RJD VVP, 2010 WL 148420, at *2 (E.D.N.Y. Jan. 12, 2010) (collecting cases). "The purposes underlying the doctrine, gleaned from *Hickman v. Taylor* … include protecting an attorney's ability to formulate legal theories and prepare cases, preventing opponents from 'free-loading' off their adversaries work, and preventing interference with ongoing litigation." *Stamps v. Town of Framingham*, 38 F. Supp. 3d 134, 144 (D. Mass. 2014). Here, given that this is a separate litigation to which the RIAG is not a party, there is minimal risk of "free-loading." But there does remain the concern of protecting an attorney's mental impressions during an investigation and possible interference with a possible underlying criminal case. So the Court will apply the work-product doctrine.

Relevant here, "[m]ost courts distinguish between 'opinion' work product, which includes 'materials that contain the mental impressions, conclusions, opinions,

2

or legal theories of an attorney,' and 'ordinary' work product, which includes everything else that is eligible for protection as work product, and accord greater protection to the former." *Havener v. Gabby G. Fisheries, Inc.*, 615 F. Supp. 3d 1, 6 (D. Mass. 2022) (quoting *In re Grand Jury Subpoena*, 220 F.R.D. at 144 (quoting *In re San Juan Dupont Plaza Hotel Fire Litig.*, 859 F.2d 1007, 1014-1015 (1st Cir. 1988))). "If a requesting party can establish substantial need and the lack of access to a substantial equivalent without undue hardship, the work product doctrine does not extend to materials that 'contain purely factual statements and do not include any opinions or impressions." *Id.* (citation modified).

The Court finds that some portions of the Category 19 documents contain clear mental impressions or opinions of counsel; specifically, all page 1 one of the PDF document, the last three lines of page 5, and all of page 7. The Court does not find that Mr. Stiles has established the heightened standard to be entitled to the prosecutor's mental impressions or opinions.

The remainder of the Category 19 documents is the prosecutor's factual recitation of the RIAG's interview of Jane Doe. The RIAG contends that this, too, should be considered opinion work product because a "prosecutor's decision of what to write and how to write it reveals their mental impressions and their deliberative process on whether and how to proceed with the prosecution at issue." (ECF No. 67 at 26.)

But the Court disagrees that such witness interview notes are automatically opinion work product. The Court is instead persuaded by courts which have held that

such an argument "goes too far" and that, instead, "purely factual material embedded in attorney notes may not deserve the super-protection afforded to a lawyer's mental impressions." *In re HealthSouth Corp. Sec. Litig.*, 250 F.R.D. 8, 12 (D.D.C. 2008) (quoting *Dir., Off. of Thrift Supervision v. Vinson & Elkins, LLP*, 124 F.3d 1304, 1308 (D.C. Cir. 1997)); *New York Times Co. v. U.S. Dep't of Just.*, 138 F. Supp. 3d 462, 472 (S.D.N.Y. 2015), *aff'd in part, rev'd in part and remanded sub nom. New York Times Co. v. United States Dep't of Just.*, 939 F.3d 479 (2d Cir. 2019). Where attorney notes record or summarize factual witness statements, and where those factual portions can be reasonably segregated from mental impressions, such content may constitute factual work product, subject to disclosure upon a showing of substantial need and undue hardship under Rule 26(b)(3)(A)(ii).

The Court finds that Mr. Stiles has met his burden to show both substantial need and undue hardship. This case turns largely on the credibility of the parties, and Mr. Stiles has identified meaningful inconsistencies in Ms. Doe's prior accounts. The factual content in the interview notes—made in a non-adversarial, investigative setting—may bear directly on that credibility and cannot be replicated through other available sources. Accordingly, the Court finds that the factual portions of the notes fall within the limited exception to work product protection and should be disclosed.

### B. Deliberative Process Privilege

The RIAG next argues that the prosecutor's notes are protected to the deliberative process privilege. "[T]o qualify for the privilege, a document must be (1) predecisional, that is, antecedent to the adoption of agency policy, and (2)

deliberative, that is, actually related to the process by which policies are formulated." *Texaco Puerto Rico, Inc. v. Dep't of Consumer Affairs*, 60 F.3d 867, 884 (1st Cir. 1995). The prosecutor's notes meet this test, but purely factual documents, or "segregable factual portions" of documents, are not covered. *Am. Trucking Assoc., Inc. v. Alviti*, 496 F. Supp. 3d 699, 716 (D.R.I. 2020) (quoting *Providence J. Co. v. U.S. Dep't of Army*, 981 F.2d 552, 559 (1st Cir. 1992)); *see also N.O. v. Callahan*, 110 F.R.D. 647, 643 (D. Mass. 1986) ("The privilege protects only expressions of opinion or recommendations in intra-governmental documents; it does not protect purely factual material.").

Having already culled expressions of opinion on the grounds of work-product protection, and thus precluding from production those portions which would reveal the deliberative process, all that remains is purely factual and, therefore, discoverable.

### C. Law Enforcement Privilege

The RIAG raised the law enforcement privilege but it appears that it directed this toward other documents referenced in the privilege log that Mr. Stiles is no longer seeking. To the extent the RIAG claims the privilege to the Category 19 documents at issue here, the privilege is inapplicable. The law enforcement privilege is used to preclude disclosure of the identity of confidential informants or information concerning "law enforcement techniques and procedures." *Roviaro v. United States*, 353 U.S. 53, 59 (1957); *Commonwealth of Puerto Rico v. United States*, 490 F.3d 50, 64 (1st Cir. 2007). The prosecutor's notes of Category 19 involve the plaintiff Jane

Doe's description of her encounter with Mr. Stiles and does not implicate the policy concerns behind the law enforcement privilege.

### D. Rule 45 – Privacy Interests

The RIAG argues under Rule 45(d)(3)(A)(iii) that the subpoena for the Category 19 documents should be quashed because it seeks a "protected matter," citing the privacy interests of the plaintiff, Ms. Doe. The Court disagrees. When the information sought is directly relevant to the central factual dispute in the case—and Ms. Doe herself has placed the events and her prior statements at issue—Rule 45 does not mandate quashing. The mere presence of privacy concerns does not transform otherwise discoverable material into "protected matter" under Rule 45(d)(3)(A)(iii), particularly in a civil action where the witness is also the plaintiff.

### E. Protective Order

Finally, the RIAG offers that if the Court does not bar production of these documents, that it issue a protective order under Rule 26(c), to bar disclosure. Given the finding of Mr. Stiles' substantial need for those portions of the documents that are not otherwise precluded, the Court finds that the RIAG has not demonstrated good cause for a protective order. The Court does, however, order that the documents be disseminated only to, and be kept confidential by, counsel of record in this litigation, the parties, and their experts, and be destroyed at the conclusion of this litigation.

## CONCLUSION

In summary, with regard to the documents identified in the RIAG's privilege log as Category 19, the RIAG's Motion to Quash (ECF No. 61) is GRANTED IN PART and DENIED IN PART. The RIAG shall produce, pursuant to Mr. Stiles' subpoena, the documents identified in Category 19 and provided to this Court as a PDF document. The RIAG may redact the first page (page 1) in its entirety, the final three written lines on page 5, and the entirety of the final page (page 7).

The parties are further ordered that these documents are to be disseminated only to, and be kept confidential by, counsel of record in this litigation, the parties, and their experts, and be destroyed at the conclusion of this litigation.

IT IS SO ORDERED.

_____
Mary S. McElroy
United States District Judge
July 14, 2025