**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| JANE DOE,<br><br>*Plaintiff,*<br><br>v.<br><br>BROWN UNIVERSITY<br><br>and<br><br>JOHN STILES,<br><br>*Defendants.* | C.A. No.:1:23-cv-00376-MSM-LDA<br><br>Civil Action and<br>Jury Trial Demanded |

**<u>SECOND AMENDED COMPLAINT AND JURY DEMAND</u>**

Plaintiff Jane Doe ("Jane" or "Plaintiff") brings this action against Defendant John Stiles ("Stiles" or "Assailant"), based upon her personal knowledge and upon the investigation of counsel regarding all other matters, for Stiles' violent rape of Jane and for his subsequent retaliatory conduct against Jane for reporting his crimes. In support of her Second Amended Complaint (the "Complaint"), Jane states as follows:

**<u>INTRODUCTION</u>**

1. On October 30, 2021, Jane, a then eighteen-year-old freshman student at Brown University in Providence, Rhode Island ("Brown"), was brutally sexually assaulted and raped by Assailant, who at the time was also a Brown student and member of Brown's men's lacrosse team. The rape occurred at what was commonly known as the "senior lacrosse house," where Assailant, as well as other members of Brown's men's lacrosse team, lived. Without Jane's consent, Assailant penetrated Jane orally, then vaginally, with his penis. Jane pleaded for him to stop, but Assailant ignored her and continued to rape her, causing Jane to suffer from significant physical injuries and severe emotional distress. When Jane started to bleed profusely from the vaginal

injuries that Assailant was inflicting on her during the rape, Assailant stopped the assault, called Jane "disgusting," and screamed at her for his blood-drenched sheets and floors. He then forced Jane to walk down his communal lacrosse house hall naked to the bathroom to shower while he mocked Jane's injuries and the pain and suffering he inflicted on Jane to his friends, including taking pictures and video of his bloody body, genitalia, and his bloody floors, and disseminating those pictures and videos to a group chat with his friends.

2. As a result of Assailant's violent rape, Jane has suffered severe physical and emotional harm, and brings forth causes of action against Assailant for Battery, Assault, and Intentional Infliction of Emotional Distress.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, which confers jurisdiction on district courts in civil actions between citizens of different States where the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

4. Plaintiff Jane Doe currently resides in Florida and is a citizen of the Commonwealth of Virginia. At the time she commenced this action, Plaintiff was a citizen of the State of Rhode Island.

5. Defendant Stiles, upon information and belief, was a citizen of the State of New Hampshire when this action was commenced.

6. The amount in controversy in this action exceeds $75,000, exclusive of interest and costs. Accordingly, this Court possesses diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332.

7. The events giving rise to this lawsuit occurred in the city of Providence, Rhode Island, which sits in this District. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2), in that this is the judicial district in which the events giving rise to the claims occurred.

**THE PARTIES**

8. Jane is a person of the age of majority and a former student at Brown, and at all times pertinent to this suit resided either on campus at Brown, or in private housing in the city of Providence, Rhode Island.

9. Defendant Stiles is a person of the age of majority and a former student at Brown, and at all times pertinent to this suit resided in the city of Providence, Rhode Island. Upon information and belief, Stiles currently resides in New York.

**JANE'S RAPE**

10. Assailant raped Jane when she was a first-year, freshman student at Brown. At the time of her rape, Jane lived on Brown's campus at Champlin Hall and was a member of Brown's women's gymnastics team and Brown's Air Force ROTC program.

11. At the time of his rape, Assailant was a member of Brown's highly-successful men's lacrosse team. He lived at 161 Waterman Street, which is directly adjacent to Brown's campus, with multiple other senior-year members of the men's lacrosse team. 161 Waterman Street was commonly known as the "senior lacrosse house."

12. Assailant raped Jane in the early morning hours of October 30, 2021, after the two saw each other at a party on the night of October 29, 2021. The party took place at 247 Hope Street, where several "junior" members of the Brown men's lacrosse team resided. This residence was commonly known as the "junior lacrosse house" and also known as "the shack." Approximately 40 male Brown students "pre-gamed" in the basement of the junior lacrosse house that evening—38 of whom were members of Brown's men's lacrosse team. The residents of the

junior lacrosse house hired a "doorman" for their party and provided the doorman with a list of 200 people permitted to attend.

13. Jane and Assailant left the party and together walked back to the senior lacrosse house, where Assailant resided. Jane was not intoxicated at the junior lacrosse house or any time thereafter, including at the time that she left the party with Assailant. Several hours earlier, before attending the party at the junior lacrosse house, Jane had consumed somewhere between 2 or 3 hard seltzers, but did not drink the entirety of those beverages. Upon arriving at the junior lacrosse house and for the remainder of the evening, Jane consumed only water. By the time Jane had left the junior lacrosse house with Assailant, she was not intoxicated and had not consumed any alcoholic beverage for several hours.

14. The senior lacrosse house is approximately one to two blocks away from Brown's athletic facilities. At that time, fourteen senior lacrosse players lived in that house. Assailant lived on the third floor. He did not share a bedroom, but he shared bathroom facilities with several other individuals residing there.

15. Inside Assailant's room, he and Jane began kissing and taking their clothes off, which Jane consented to.

16. Assailant then asked Jane to perform oral sex, which she had previously told him that she was not comfortable engaging in and had a severe aversion to doing. On the early morning of October 30, Jane again said no, telling Assailant that she had never done it before and did not want to. Stiles asked several more times in different ways, and each time Jane refused.

17. Assailant ignored her refusals and repeatedly and aggressively demanded that Jane perform oral sex on him. His demeanor frightened Jane. Assailant then took Jane's head physically in his hands, forcibly moved her head down to his penis, and forced her to perform oral

sex on him. His hands remained on the back of Jane's head, forcing her to continue by applying pressure to keep her head down. Assailant admitted that he had his hands on Jane's head and applied some level of pressure. Jane gagged the entire time. Brown's final investigative report from Jane's initial Title IX Complaint also notes that Assailant acknowledged that Jane was gagging from time to time while she was performing oral sex. Jane did not consent to performing fellatio.

18. When Assailant finally took his hands off Jane's head, she was crying and wiping tears from her eyes. Assailant then stood up and took a pill from the table. When Jane asked Assailant what the pill was for, he replied, "It makes you hard."

19. Assailant asked if he needed a condom and then put one on and got on top of Jane. Jane was confused and frightened by his conduct. Assailant then penetrated Jane vaginally with his penis. Assailant's penetration hurt Jane instantly and she cried out for Assailant to "please stop." Assailant ignored her plea and continued to penetrate Jane vaginally without her consent and with aggression and force even though it caused Jane a great amount of pain. Jane mentally disassociated. Her body stiffened and she did not actively participate in the sexual intercourse. Over the course of more than 30 minutes, Assailant moved Jane's body into multiple positions and penetrated her vaginally in each of them without her consent. Jane weighed approximately 100 pounds; Assailant was roughly a foot taller and twice her weight. At one point Assailant scooped Jane up from the bed, with her legs over his forearms and his hands under her lower back, and, while standing, thrust her body onto his penis. Jane held on only to keep from falling backward. At another point he penetrated her from behind as she lay face down on the bed.

20. Eventually, Assailant screamed out "what the fuck" and turned on the lights. Jane looked down and saw that she was bleeding profusely from her vagina and that her blood was all

over the side of the bed and floor. Despite causing her severe injuries, Assailant never asked Jane if she needed help or medical attention. Instead, he berated her for the blood, screaming "What the fuck is wrong with you?! What the fuck is wrong with you?!" While Jane stood naked and trembling with fear from Assailant's aggression, Assailant continued to scream at Jane so close to her face that he pushed her back against the wall.

21. Assailant became locked on the idea that Jane had her period even though she repeatedly told him that she did not, that her period had ended days earlier, and that he had hurt and injured her. He repeatedly screamed at her for not telling him that she was on her period while physically leaning into her face.

22. Assailant then wrapped a towel around himself and walked Jane to the bathroom. She requested a towel to cover herself, but he refused to give her one, forcing Jane to walk naked down the communal hallway in the senior lacrosse house to the communal bathroom. He then left Jane alone inside the bathroom while he stood outside in the hallway. Jane, after hearing Stiles talk to someone in the hallway, cracked the bathroom door open and saw him showing photos from his phone to someone else. Upon information and belief, Assailant was showing pictures of his penis covered in Jane's blood from her injuries to a fellow lacrosse player in the hallway. Jane heard the other individual ask "is she okay" and then quickly closed the door to avoid suspicion.

23. While Jane was in the bathroom, Assailant took pictures and videos of the blood in his room and of his naked body and genitals covered in blood and sent those pictures and videos to a group chat and over SnapChat to other members of Brown men's lacrosse team who also lived at the senior lacrosse house. In those messages, Assailant and other members of the team joked about Assailant's rape of Jane and the injuries he caused her. One of Assailant's friends responded,

“is that poor little girl okay” and “did you rape her or was it actually consensual?” Assailant also asked his friends, “Am I a criminal?” to which one of his friends responded, “Triple homicide.”

24. In response to Assailant’s snapchat videos, other members of the senior lacrosse house seemed to acknowledge the horror of Jane’s injuries while simultaneously joking about what Assailant had done. Other members of Brown’s lacrosse team responded in the chat group by referring to the incident as a “war crime,” joking that Assailant’s “penis looks like a weapon,” and another stating that he would “snort” the blood. Upon information and belief, one said “they’re coming for you” to Stiles when police sirens could be heard outside. Only one member of the lacrosse group chat asked if Jane was okay and safe. Instead of responding that she was okay, Assailant merely stated: “I was very sternly scolding her and then walked her home.”

25. Meanwhile, Jane attempted to take a shower, but the water was painful on her injuries. Assailant came into the bathroom and into the shower. When Jane tried to leave, he held onto Jane’s arms, forcing her to stay naked in the shower with him while he showered. In the shower, Assailant told Jane that she “can’t leave until I clean your shit off of me.” He also said his father was a doctor and that the blood “didn’t look like period blood” and she “should get that checked out.” Jane was not on her period at the time of the intercourse; her injuries stemmed from Assailant’s forcible sexual compulsion.

26. Assailant then aggressively and forcefully pulled Jane by her arm back into his room where he again screamed at her for the blood covering his bed and floor. Fearful of Assailant, Jane was forced to crouch down while naked and bleeding to clean her blood from Assailant’s room. Assailant handed Jane paper towels and told her to “clean up the f-----g mess I had made.” He continued to berate Jane as she was wiping her blood around in circles on the floor, while

aggressively ripping the sheets off his bed and throwing them out the window into a dumpster below. He then turned to Jane, who was still naked, and said “you need to go home.”

27. Jane attempted to put her shorts back on, but they were painfully tight due to the swelling from the vaginal tearing caused by Assailant’s rape. Jane asked Assailant for clothes, but Assailant denied her request telling her that she was “f-----g disgusting.” Jane then put her clothes back on, having to leave her shorts completely unbuttoned in order to wear them, and carried her shoes to avoid the agonizing pain from bending down to put them on.

28. Assailant then told Jane to come with him. Instead of immediately leaving the house, Assailant led Jane to a lit room with his teammates present. Jane tried to hide behind a wall, but Assailant forcibly grabbed her arm and yanked her out to the center of the entryway of the room where other members of Brown’s lacrosse team had congregated.

29. Assailant then insisted on walking her back to her residence hall. He walked ahead of her. When other people approached on the street, he told Jane to be quiet so they would not hear and steered her across the street to avoid them. Jane complied with all of Assailant’s commands as she feared if she did not comply, Assailant would cause her further harm.

30. As a result of Assailant’s rape, Jane suffered severe physical injuries, including injuries to her vagina which may require surgery, a lasting injury to her left labia minora, and severe emotional injuries, including post-traumatic stress disorder and panic disorder, as well as anxiety and depression.

31. Specifically, Jane suffered from several days of bleeding in the days immediately following her rape and severe vaginal tearing, swelling, and pain to the point where she could not wear underwear or pants. As a result of her injuries, she was unable to fully compete in gymnastics for the following school year and unable to wear her uniform for ROTC.

32. When Jane woke the morning after the rape, she passed a large clot several inches long of blood from her vagina, which was very painful and had to be pulled out. She bled daily for several days afterward. Her vaginal area was so swollen and painful that she could barely walk and could wear only loose-fitting clothing. She could not use a tampon, and even a pad was painful because it stuck to her injuries.

33. Even after the bleeding stopped, Jane continued to be in daily pain for nearly a year and still suffers from regular vaginal pain.

34. On November 4, 2021, Jane disclosed Assailant's rape to her Brown gymnastics coach, who, upon information and belief, disclosed the same to Brown's Title IX office that same day. She filed a formal Title IX complaint on November 18, 2021.

35. On December 3, 2021, after conducting a hearing, the State of Rhode Island District Court granted Jane's Complaint for Protection from Domestic Abuse against Assailant and ordered that its Final Judgment – Protection from Domestic Abuse remain in full force and effect for the following three years. Jane had originally received a temporary restraining order on November 18, 2021.

## ASSAILANT'S RETALIATORY CONDUCT

36. Following Jane's disclosure of the rape and filing of formal complaints with Brown University, Assailant engaged in a pattern of retaliatory conduct designed to silence, intimidate, and inflict further emotional harm upon Jane

37. On December 13, 2021, several members of Brown's men's varsity lacrosse team approached Jane in Brown's Science Library and intimidated her in retaliation for filing her First Formal Complaint. Specifically, while Jane was studying for finals on the fourth floor, four men in Brown lacrosse sweatshirts sat down at the table next to her and started clearing their throats very loudly every 30 seconds. Jane became very frightened, believing that she may have a panic

attack. After ten minutes, Jane decided to walk to another floor in the library. A member from the lacrosse team followed her to the elevator bank. She was then able to leave the library without incident.

38. Shortly thereafter, Assailant filed a Verified Complaint in federal court against Brown claiming injunctive relief (the "Federal Court Action").

39. Despite filing the complaint under a pseudonym so that his own identity would be protected, Assailant pled his publicly-filed Complaint in such a way that Jane was the only identifiable person from the information provided therein, including details about Jane's specific year at Brown and the extracurricular activities she was involved with, including as a member of Brown's gymnastic team and ROTC. The identifying details included were gratuitous and had the effect of outing Jane's true identity. Assailant included this information in his publicly-filed Complaint to retaliate against Jane for her First Formal Complaint. Jane was not a party to the Federal Court Action.

40. Through his deliberate dissemination of sexually explicit photographs and videos depicting Jane's serious injuries and taken without her consent, as well as videos of her court hearing for the restraining order, and through his mocking communications to members of Brown's lacrosse team regarding the rape and Jane's injuries, Assailant continued his pattern of abuse and retaliation against Jane well after the rape itself.

41. Members of the Brown lacrosse team actively took photographs of Jane while she was out on or near campus to mock or intimidate her.

42. Assailant's retaliatory conduct was intended to and did cause Jane to suffer severe emotional distress, fear for her safety, and further humiliation.

43. Because Assailant's motivations in the Federal Court Action were clearly retaliatory and because members of Brown's lacrosse team and other Brown students were actively intimidating Jane for filing the First Formal Complaint, Jane initiated a Second Formal Complaint against Assailant for Title IX retaliation on January 14, 2022.

44. On April 26, 2022, Brown issued its Investigative Report related to the First Formal Complaint.

45. On May 12, 2022, Brown issued its official findings and disciplinary recommendation on the First Formal Complaint, finding that Assailant was responsible for Sexual Assault in violation of Brown's Sexual and Gender-based Misconduct Policy. Sexual Assault, as defined by Brown's policy, includes "rape" which is defined as "[a]ttempted or completed anal or vaginal penetration of another person, no matter how slight, by a body part or object without consent and/or completed or attempted oral penetration by a sex organ of another person."

46. On August 18, 2022, Brown issued an Appeal Statement of Finding, Final Determination, and Rationale (the "Appeal Finding"). The Appeal Finding denied Respondent's appeal of the finding that he committed sexual assault, upholding the finding of "responsible."

47. Even after Assailant graduated, Jane continued to endure severe retaliation due to the filing of her Title IX Complaints, including continued harassment and other retaliatory actions by members of Brown's lacrosse team and coaching staff, and from other Brown students.

48. To this day, Jane continues to fear for her safety and well-being, and has suffered extreme emotional harm and distress from Assailant's conduct, as detailed herein.

49. Also as a result of all of the foregoing conduct, Jane missed several weeks of class, received an incomplete in one course, and was placed on academic warning in the spring of her first year. She twice had to reduce her course load, and she was unable to join extracurricular

activities including, but not limited to, a research lab and the Brown Daily Herald. Jane also had to decline a $3,500 flight-training scholarship she had been awarded. During her first two years at Brown, she missed the steps required to compete for a military pilot position, which carries higher pay than the career field to which she has since been assigned.

50. Jane has suffered and continues to suffer severe emotional harm, including post-traumatic stress disorder, anxiety disorder, and depression as a result of the foregoing conduct. Jane's emotional distress has also manifested physically, including in panic attacks during which parts of her body cramp or go numb, vomiting, nightmares and flashbacks, recurrent headaches, swelling around her eyes, disrupted sleep, and a weight gain of approximately 30 pounds in the months after the rape. Jane also incurred extensive physical injuries from her underlying assault that continue to cause her pain to this day.

## <u>COUNT I – BATTERY</u>
## Against Defendant Stiles

51. Plaintiff hereby incorporates by reference the allegations set forth in the above paragraphs as if fully set forth herein.

52. Without Jane's consent, Assailant sexually assaulted Jane by penetrating Jane orally, then vaginally, with his penis. Jane asked Assailant to stop, but he failed to do so at any point in time.

53. Assailant's sexual assault was intended to cause, and in fact did cause, an offensive contact with Jane's body, which she did not consent to and which caused her immense bodily trauma and injury, which constitutes the tort of battery under Rhode Island state law.

54. As a direct, natural, and proximate result of Assailant's battery, Plaintiff has suffered actual damages including, but not limited to, medical expenses associated with mental and physical health treatment, inconvenience, insult, mental distress, fright, humiliation, physical

assault, anxiety, emotional and physical pain and suffering, a denial of access to educational benefit, loss of educational benefit, loss of income, loss of enjoyment of life, and other economic or non-economic damages, for which she is entitled to just compensation.

**COUNT II – ASSAULT**
**Against Defendant Stiles**

55. Plaintiff hereby incorporates by reference the allegations set forth in the above paragraphs as if fully set forth herein.

56. Without Jane's consent, Assailant sexually assaulted Jane by penetrating Jane orally, then vaginally, with his penis.

57. Assailant forced Jane's head and mouth down to his penis and held Jane's head there, forcing Jane to perform oral sex on Assailant without her consent. Said act was of a threatening nature and placed Jane in reasonable fear of imminent bodily harm.

58. Assailant then raped Jane vaginally, causing her significant pain and serious physical injuries. Said act was of a threatening nature and placed Jane in reasonable fear of imminent bodily harm.

59. After discovering her injuries, Assailant then aggressively and repeatedly berated Jane for the blood covering his sheets and floor. He repeatedly grabbed her arm and held her in the shower. Assailant's threatening, intimidating, and aggressive tone and demeanor and his physical proximity to Jane, which behavior immediately followed his sexual assault of Jane, placed Jane in reasonable fear of imminent bodily harm.

60. As a direct, natural, and proximate result of Assailant's assault, Plaintiff has suffered actual damages including, but not limited to, medical expenses associated with mental and physical health treatment, inconvenience, insult, mental distress, fright, humiliation, physical assault, anxiety, emotional and physical pain and suffering, a denial of access to educational

benefit, loss of educational benefit, loss of income, loss of enjoyment of life, and other economic or non-economic damages, for which she is entitled to just compensation.

**COUNT III – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**Against Defendant Stiles**

61. Plaintiff hereby incorporates by reference the allegations set forth in the above paragraphs as if fully set forth herein.

62. Plaintiff alleges intentional infliction of emotional distress caused by Assailant's oral and vaginal rape of Jane and Assailant's threatening, intimidating, and aggressive conduct following Jane's sexual assault, as well as his subsequent retaliatory conduct.

63. By raping Plaintiff orally and vaginally, causing significant vaginal injury, berating her for the amount of blood that poured from her injuries, forcing her to walk naked and bleeding down a communal hallway in the senior men's lacrosse house, forcibly yanking her out into view of his teammates, making her get on her hands and knees naked and bleeding to clean up her own blood, and forcing her to walk home with Assailant, Assailant engaged in extreme and outrageous conduct and specifically intended for his conduct to cause Plaintiff to suffer severe emotional distress.

64. Assailant further engaged in extreme and outrageous conduct that specifically intended to cause Plaintiff to suffer severe emotional distress as Assailant intentionally disseminated pictures, videos, and messages of the scene of the sexual assault, Jane's blood covering Assailant's genitalia, body, and bedroom, and text messages intended to mock, embarrass, and humiliate Jane. Assailant disseminated these pictures, videos, and messages to at least several other members of Brown's men's lacrosse team, which pictures, videos, and messages identified Jane explicitly.

65. Assailant further engaged in extreme and outrageous conduct through his retaliatory filing of a federal lawsuit with identifying details about Jane designed to reveal her identity despite using a pseudonym to conceal his own, specifically intending to cause Plaintiff to suffer severe emotional distress, humiliation, and fear.

66. As a result of Assailant's extreme and outrageous conduct, Plaintiff has suffered severe emotional distress, including, but not limited to post-traumatic stress disorder, panic disorder, anxiety, and depression, the physical manifestations described above, and other such injuries and physical manifestations as may appear during the course of discovery and trial in this matter. Assailant is aware of such emotional distress suffered by Plaintiff.

67. As a direct, natural, and proximate result of Assailant's intentional infliction of emotional distress, Plaintiff has suffered actual damages including, but not limited to, medical expenses associated with mental and physical health treatment, inconvenience, insult, mental distress, humiliation, physical assault, anxiety, emotional and physical pain and suffering, a denial of access to educational benefit, loss of educational benefits, loss of income, and other economic and non-economic damages.

## PRAYER FOR RELIEF

For all the foregoing reasons, Plaintiff prays for judgment against Defendant as follows:

A. An award of damages to Plaintiff, including compensatory damages and common law punitive damages;

B. An award of litigation costs and expenses, including reasonable attorneys' fees to the Plaintiff;

C. For interest based on damages, as well as pre-judgment and post-judgment interest as allowed by law;

D. Injunctive relief; and

E. Any and all such additional and further relief as this Court deems just and equitable under the circumstances.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury in this action of all issues so triable.

Respectfully submitted,

Dated: October 2, 2026

*/s/ Ken Massey*
**GRANT & EISENHOFER P.A.**
Ken Massey (*Pro Hac Vice*)
Elizabeth Bailey (*Pro Hac Vice*)
123 S. Justison St., 6th Floor
Wilmington, DE 19801
Tel: (302) 622-7000
kmassey@gelaw.com
ebailey@gelaw.com

**HERMAN LAW GROUP**
Louise A. Herman
1445 Wampanoag Trail
Suite 104
E. Providence, RI 02915
Tel: 401-655-5554
lherman@lhermanlaw.com

*ATTORNEYS FOR PLAINTIFF*